UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
:
FRANCISCO G. HICIANO,                            :
:
                                    Plaintiff,    :
:
           -v-                                    :
:
TOWER WEST, INC., et al.,                        :
:
                                 Defendants.     :
:
------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/09/2015
```

15-CV-2117 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

On January 20, 2015, this Court so ordered the voluntary dismissal with prejudice of a case brought by Plaintiff Francisco Hiciano ("Plaintiff") and another person against Defendants Tower West, Inc., Tower West Associates LP, Grenadier Realty Corporation, and Grenadier Reality Management, LLC (collectively, "Defendants"), among other entities, for claims arising out of Defendants' attempts to evict Plaintiff or move him to a smaller apartment. (*See* No. 14-CV-4468 ("*Hiciano I*"), Docket No. 32). On March 18, 2015, Plaintiff filed the instant action against Defendants in New York State Supreme Court, alleging breach of the covenant of quiet use and enjoyment, common law nuisance, and unlawful eviction. Two days later, Defendants removed the case to federal court, contending that there is federal-question jurisdiction. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants now move to dismiss the Complaint on the ground that it is barred by *res judicata*. (Docket No. 7). Plaintiff cross-moves to remand the case back to state court. (Docket No. 12). For the reasons explained below, Plaintiff's motion is granted, and Defendants' motion is denied as moot.

## BACKGROUND

Plaintiff has resided in a building managed and owned by Defendants since he was six months old.  (Notice of Removal (Docket No. 1), Ex. A ("Compl.")  ¶¶ 2-7).  Plaintiff alleges that around the end of 2011, he learned that Defendants' employees were engaging in "an increasing level of corruption," including falsifying financial records to allow ineligible tenants to receive housing subsidies.  (*Id.* ¶¶ 16-17).  Thereafter, Defendants informed Plaintiff, who lives in a two-bedroom apartment, that he would have to downsize to a one-bedroom unless he paid $1,000.  (*Id.* ¶¶ 19-20).  Plaintiff refused, believing that his medical need for a live-in caregiver qualified him for a two-bedroom apartment.  (*Id.* ¶¶ 19, 21).  Defendants then initiated eviction proceedings against Plaintiff, claiming that he was illegally subletting the second bedroom of the apartment, that he had failed to report his entire income, and that he was "under-utilizing" the second bedroom.  (*Id.* ¶ 22).  They also claimed that Plaintiff's eligibility for a rent subsidy depended in part on the income of his partner, Jeffrey Cunningham, whom Defendants believed to be living with Plaintiff.  (*Id.* ¶ 31).  The eviction proceedings ultimately concluded with a stipulation of settlement, pursuant to which Plaintiff was allowed to remain in his apartment with a live-in caregiver.  (*Id.* ¶¶ 23-24).  In turn, Plaintiff stipulated that Cunningham "does not reside in the subject apartment."  (Defs.' Reply Mem. Law Supp. Defs.' Mot To Dismiss & Opp'n Pl.'s Cross-Mot. To Remand (Docket No. 14) ("Defs.' Reply"), Ex. L at 5.).

In June 2014, Plaintiff filed suit in New York State Supreme Court, alleging — to the extent relevant here — that Defendants and others had engaged in housing discrimination in violation of New York state law and failed to appropriately pay him for work he had performed for Defendants in violation of both federal and state law. (*Hiciano I*, Notice of Removal (Docket

No. 1), Ex. A ("*Hiciano I* Compl.") ¶¶ 42-65).[1]  Defendants removed the case to this Court and it

was assigned to the undersigned.  (*Hiciano I*, Docket No. 1).  In January 2015, three weeks

before the close of discovery, Plaintiff submitted a letter requesting that the Court agree to

dismiss the case without prejudice.  (*Id.*, Docket No. 21).  Defendants objected on the ground

that Plaintiff had "a history of asserting and withdrawing [his] claims."  (*Id.*, Docket No. 22; *see

also id.*, Docket No. 23).  The Court denied Plaintiff's request on January 12, 2015 (*id.*, Docket

No. 25), and, on January 15, 2015, the parties submitted a stipulation of voluntary dismissal *with*

prejudice.  (*Id.*, Docket No. 30).  The Court so ordered the stipulation on January 20, 2015, and

the case was then dismissed.  (*Id.*, Docket No. 32).

Plaintiff filed this case in New York State Supreme Court on March 18, 2015.  (Notice of

Removal 1).  Plaintiff makes similar factual allegations to those that were set forth in the *Hiciano

I* Complaint, but his legal claims are different; as discussed above, Plaintiff now claims breach of

the covenant of quiet use and enjoyment, common law nuisance, and unlawful eviction.  (Compl.

¶¶ 39-57).  In support of his claim for the breach of the covenant of quiet use and enjoyment, for

example, Plaintiff alleges that Defendants have "engaged in a systemic and prolonged pattern of

harassment" against him, including deactivating his electronic key to the building, questioning

his visitors, and subjecting him to constant surveillance.  (*Id.* ¶¶ 25-30).  He also alleges that

Defendants' continued refusal to allow Cunningham to serve as his live-in caregiver violates

regulations promulgated by the U.S. Department of Housing and Urban Development ("HUD").

(*Id.* ¶¶ 33-37, 42).  On March 20, 2015, Defendants removed the case to this Court, invoking the

Court's federal-question jurisdiction under Title 28, United States Code, Section 1331.  (Notice

---

[1]     Cunningham was also a plaintiff in *Hiciano I*, joining in Plaintiff's allegations of housing
discrimination.  (*Hiciano I* Compl. ¶¶ 40, 42-47).

of Removal 1-2).  On April 8, 2015, Defendants moved to dismiss the Complaint on the ground

that it is barred by *res judicata*.  (Docket No. 7).  On April 29, 2015, Plaintiff cross-moved to

remand the case back to state court.  (Docket No. 12).

## DISCUSSION

As noted, Defendants contend that this Court has federal-question jurisdiction pursuant to

Section 1331.  As a general matter, federal-question jurisdiction extends "only [to] those cases in

which a well-pleaded complaint establishes either that federal law creates the cause of action or

that the plaintiff's right to relief necessarily depends on resolution of a substantial question of

federal law."  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-

28 (1983).  At the same time, a "plaintiff cannot avoid removal by declining to plead 'necessary

federal questions.'"  *Romano v. Kazacos*, 609 F.3d 512, 518-19 (2d Cir. 2010) (quoting *Rivet v.

Regions Bank*, 522 U.S. 470, 475 (1998)); *see Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271

(2d Cir. 2005) ("[A] plaintiff may not defeat federal subject-matter jurisdiction by 'artfully

pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence,

based on federal law.").  Applying that principle, the Supreme Court has held that, "in certain

cases federal-question jurisdiction will lie over state-law claims that implicate significant federal

issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

The doctrine — known as the "substantial federal-question doctrine" — "captures the

commonsense notion that a federal court ought to be able to hear claims recognized under state

law that nonetheless turn on substantial questions of federal law, and thus justify resort to the

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Id.*;

*see generally In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 392-94

(S.D.N.Y. 2014).

Pursuant to the substantial federal-question doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, — U.S. —, 133 S.Ct. 1059, 1065 (2013). In *Grable,* the leading modern case on the doctrine, the Supreme Court found federal jurisdiction proper in part because the federal issue in dispute — whether a plaintiff in a quiet title action had received proper notice from the Internal Revenue Service of the sale of his seized property — "appear[ed] to be the only legal or factual issue contested in the case." 545 U.S. at 315. Further, and importantly, the Court found that "jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation" because "it is the rare state quiet title action that involves contested issues of federal law." *Id.* at 319. Since *Grable*, the Supreme Court has emphasized that the doctrine confers federal jurisdiction in only a "special and small category" of cases, *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), and that if the federal issue presented is not "a nearly pure issue of law," but rather "is fact-bound and situation-specific," federal jurisdiction is not appropriate, *id.* at 700-01 (internal quotation marks omitted).

Applying those standards here, the Court concludes that it lacks jurisdiction over the case and that it must be remanded to state court. As an initial matter, all of Plaintiff's causes of action are creatures of state law. (*See* Compl. ¶¶ 39-57). To the extent that Defendants argue otherwise (*see* Defs.' Reply 3-5), their argument is without merit. Plaintiffs' only claims that even mention federal law are the first and third causes of action — for breach of the covenant of quiet use and enjoyment and unlawful eviction, respectively.[2] In particular, Plaintiff's first claim includes,

---

[2]      Defendants' memorandum discusses only the first cause of action. (Defs.' Reply 3 (arguing that the first cause of action arises under federal law and that the Court should exercise

among its allegations, that "Defendant has . . . capriciously denied Plaintiff the live-in caregiver of his choice, a clear violation of Housing and Urban Development regulations." (Compl. ¶ 42). Similarly, his third claim includes the allegation that "Defendants' recurring harassment and their refusal to allow Plaintiff the live-in caregiver of his choice constitutes a course of conduct which interferes with" Plaintiff's enjoyment of his home. (*Id.* ¶ 52). Despite those passing references to federal law, however, Plaintiff's claims are ultimately for the "deni[al of] the quiet use and enjoyment of his home" (*id.* ¶ 44), and "Unlawful Eviction" (*id.* ¶ 53), both of which are indisputably state-law causes of action.[3]

Thus, the Court may exercise subject matter jurisdiction over this case only if Defendants show that at least one of Plaintiff's claims "turn[s] on substantial questions of federal law." *Grable*, 545 U.S. at 312. They have not. Plaintiff's first and third causes of action are premised on the theory that Defendants have engaged in "a prolonged and persistent pattern of harassment against Plaintiff," only part of which implicates federal law. (*Id.* ¶ 41; *see id.* ¶¶ 52-53 (alleging that Plaintiff's rights have been violated by Defendants' "recurring harassment")). It is well established that "a claim supported by alternative theories in the complaint may not form a basis for [federal] jurisdiction unless [federal] law is essential to each of those theories." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988); *see Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("Where a federal issue is present as only one of multiple

---

supplemental jurisdiction over the remaining causes of action)). Because both the first and third causes of action arguably implicate federal law, however, the Court will address both.

[3]     To the extent Plaintiff's fourth "cause of action" — seeking a declaration that Cunningham "is an appropriate and suitable caregiver" for Plaintiff — is seen as a distinct claim, it too could arguably implicate federal law. (Compl. ¶¶ 55-57). Whether Plaintiff would be entitled to such a declaration, however, is as likely to turn on an interpretation of the stipulation — an issue of state law — as it is on an interpretation of federal law. Accordingly, the same analysis would apply to it as to the first and third causes of action.

theories that could support a particular claim, however, this is insufficient to create federal jurisdiction.") (citing *Christianson*, 486 U.S. at 807-809); Wright & Miller, Fed. Prac. & Proc. Juris. § 3562 (3d ed.) (recognizing *Christianson*'s applicability to the interpretation of Section 1331).  Here, many — indeed most — of Plaintiff's harassment allegations have nothing to do with federal law.  (*See, e.g.*, Compl. ¶¶ 26-30 (alleging that Defendants harassed Plaintiff by, among other actions, deactivating his electronic key, verbally assaulting him, and informing other tenants that Plaintiff is responsible if they have been asked to downsize their apartment)). It follows that Plaintiff could prevail on his claims without the need for a court to ever resolve the federal question of whether Defendants violated HUD regulations.  Because Plaintiff "may or may not be entitled to relief for reasons that are completed unrelated to the provisions and purposes of federal law," the Court cannot say that the case turns on a substantial question of federal law.  *Loussides v. Am. Online, Inc.*, 175 F. Supp. 2d 211, 213 (D. Conn. 2001); *see also PCVST Mezzco 4, LLC v. Wachovia Bank Commercial Mortg. Trust*, No. 14-CV-6023 (AJN), 2015 WL 153048, at *5 (S.D.N.Y. Jan. 12, 2015) (concluding that interpretation of federal law was not dispositive "because plaintiffs allege[d] that defendants committed other acts demonstrating bad faith" and listing cases (internal quotation marks omitted)).

Although the Court would be compelled to remand the case to state court on that basis alone, the Court also lacks subject matter jurisdiction for other reasons.  First, whether Defendants violated the relevant HUD regulations is not a "nearly pure" issue of law.  *Empire Healthchoice Assur.*, 547 U.S. at 700.  Instead, whether Defendants complied with HUD regulations turns on, among other questions, (1) the nature of Plaintiff's disability and whether a caregiver is needed as a reasonable accommodation of that disability and (2) whether Plaintiff has "commit[ted] fraud, bribery or any other corrupt or criminal act in connection with any

federal housing program" that would entitle Defendants to "refuse to approve a particular person as [his] live-in aide."  24 C.F.R. § 982.316.  Thus, the case is exactly the type of "fact-bound and situation-specific" dispute over which federal courts should decline to exercise jurisdiction.  *See Empire Healthchoice Assur.*, 547 U.S at 700-01.  Second, exercising jurisdiction over more or less run-of-the-mill landlord-tenant disputes based solely on the potential relevance of one HUD regulation "would materially affect, or threaten to affect, the normal currents of litigation," as many eviction disputes are likely to involve some interpretation of federal housing regulations. *Grable*, 545 U.S. at 319; *see Henry Phipps Plaza South Assoc. Ltd. Partnership v. Rodriguez*, No. 12-CV-1060 (LAK), 2012 WL 614371, at *3 (S.D.N.Y. Feb. 27, 2012) (declining to exercise jurisdiction over a case where a landlord argued, among other theories, that HUD regulations authorized the termination of a tenancy because "a contrary conclusion . . . would lead to substantial diversion of landlord-tenant cases from state to federal courts in the absence of any indication that Congress ever intended such a disruption in the ordinary 'balance of federal and state judicial responsibilities'" (quoting *Grable*, 545 U.S. at 314)); *see also Bannister Assocs. v. Gibson*, No. 12-CV-2433 (JFM), 2012 WL 4846764, at *1 (D. Md. Oct. 10, 2012) (rejecting the argument that the Court had subject matter jurisdiction because the terms of the lease were dictated by federal regulations because "Congress certainly did not contemplate that every eviction case concerning a Section 8 tenant would be brought in federal court").  Accordingly, this case must be and is remanded to state court.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED.  Accordingly, Defendants' motion to dismiss is DENIED as moot — albeit without prejudice to renewal in

state court.  The Clerk of Court is directed to terminate Docket No. 7; to remand the case back to

New York Supreme Court, New York County; and to close the case.


SO ORDERED.

Date:   June 9, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge